UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                       :

VERNAY DENISE SHELLS,          :           CASE NO. 15-CV-1034
                       :
        Plaintiff,         :
                       :
        vs.              :           OPINION & ORDER
                       :           [Resolving Doc. 8]
CAROLYN W. COLVIN, Acting    :
Commissioner of Social Security,  :
                       :
        Defendant.      :
                       :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Vernay Denise Shells claims the Social Security Administration wrongly denied her application for Supplemental Security Income and Social Security Disability benefits.[1] Under local rule, the case was given to Magistrate Judge Burke for a report and recommendation. Magistrate Judge Burke recommends affirming the Administrative Law Judge's denial of benefits.[2] Plaintiff objects.[3]

For the following reasons, this Court **ADOPTS** the recommendation of the Magistrate Judge, **AFFIRMS** the ALJ's denial of benefits, and **DENIES** Plaintiff's motion for summary judgment.

## I. Background

On January 9, 2012, Plaintiff Shells filed for disability benefits.[4] She alleged a January 8, 2011 disability onset date. Shells alleged several physical and mental impairments, including bipolar disorder, panic disorder, post-traumatic stress disorder, headaches, hypertension, mitral

---

[1] Doc. 1.
[2] Doc. 15.
[3] Doc. 16.
[4] This Court relies on the Report and Recommendation, Doc. 15, and the administrative record, Doc. 6, for this case's procedural history.

Case No. 15-cv-1034
Gwin, J.

valve prolapsed, obesity, and degenerative disc disease, pain in left leg, ankle, hip, and knee, and

hypertension.[5]

On March 22, 2012, the Social Security Administration denied Shells' request for

benefits. On August 23, 2012, the Social Security Administration again denied Shells' request

after reconsideration.

On September 20, 2013, Administrative Law Judge M. Scott Kidd held a hearing on

Shells' benefits application. On January 16, 2014, the ALJ found that Shells was not disabled

from January 8, 2011 and denied Shells' application. The ALJ made the following findings:

1.  Shells met the insured status requirements through December 31, 2011.[6]

2.  Shells had not engaged in substantial gainful activity since January 8, 2011, the
    alleged onset date.[7]

3.  Shells had the following severe impairments: bipolar disorder; panic disorder
    without agoraphobia; PTSD; anxiety disorder; headaches; hypertension;[8] mitral
    valve prolapse; obesity; status/post open reduction and internal fixation a fracture
    distal left fibular; and lumbar degenerative disc disease.[9]

4.  Shells did not have an impairment or combination of impairments that met or
    medically equaled the severity of one of the listed impairments.[10]

5.  Shells had the residual functional capacity to perform light work except she could
    only occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds.
    She could occasionally crouch, kneel, squat, and crawl. She must avoid all
    exposure to hazards such as unprotected heights. She could perform unskilled to
    semi-skilled work, in a static environment with no strict time or high production
    quotas. She could have frequent interaction with others.[11]

6.  Shells was unable to perform any past relevant work.[12]

---

[5] Doc. 1 at 1-2. Plaintiff does not seem to object to the ALJ's rulings as to Shells' physical impairments. This Court will therefore only deal with Plaintiff's allegations of mental impairment.
[6] Doc. 6 at 14.
[7] Id.
[8] The ALJ lists hypertension as both a severe and non-severe impairment. Id. Plaintiff does not challenge this finding.
[9] Id.
[10] Id. at 14-15.
[11] Id. at 16-19.
[12] Id. at 19.

Case No. 15-cv-1034
Gwin, J.

  7.  Shells was born in 1964 and was 46 years old, On the alleged disability onset date, she falls within the definition of a younger individual age 18-49.[13]

  8.  Shells had at least a high school education and was able to communicate in English.[14]

  9.  Transferability of job skills was not material to the determination of disability.[15]

  10.  Through the date last insured, considering Shells' age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Shells could perform, including routing clerk, mail clerk, and addressor.[16]

Based on the foregoing, the ALJ determined that Shells was not disabled from January 8, 2011, through the date of the decision.[17]

On March 24, 2015, the Appeals Council denied Shells' request for review.[18] The ALJ's decision became final with the Appeals Council's denial.

On May 22, 2015, Plaintiff Shells filed the complaint in this case. On September 9, 2015, Shells moved for summary judgment on her wrongful denial of benefits claims.[19]

On March 30, 2016, Magistrate Judge Burke filed her Report and Recommendation. Magistrate Burke recommends denying Shells' summary judgment motion and affirming the ALJ's denial of Shells' benefits application.[20]

On April 13, 2016, Plaintiff filed two objections to the Report and Recommendation. With her first objection, Plaintiff argues that the ALJ improperly discounted Plaintiff's treating psychiatrist, Dr. Ravinder K. Brar, M.D.'s testimony and failed to properly determine Plaintiff's

---

[13] *Id.* at 20.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 20-21. The Vocational Expert described the routing clerk and mail clerk jobs as light jobs (*id.* at 67) and addressor as a sedentary job (*id.* at 68). Plaintiff does not challenge the ALJ's identification of addressor as a light job (*id.* at 20).
[17] *Id.* at 21.
[18] Doc. 1 at 2.
[19] Doc. 8.
[20] Doc. 15.

-3-

Case No. 15-cv-1034
Gwin, J.

residual functional capacity. Plaintiff also argues that the ALJ improperly discounted Plaintiff

Shells' own testimony about the severity of her mental impairments. This Court reviews Shells'

objections *de novo*.[21]

## II. Legal Standard

In reviewing an ALJ's disability determination under the Social Security Act, a district

court is limited to reviewing whether the ALJ's decision is "supported by substantial evidence

and is made pursuant to proper legal standards."[22]  Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."[23]  A district

court should not try to resolve "conflicts in evidence or decide questions of credibility,"[24] and

may not reverse an ALJ's decision when substantial evidence supports it, even if the court would

have made a different decision.[25]

To establish disability under the Social Security Act, Plaintiff must show that she cannot

engage in any substantial gainful activity because of a "medically determinable physical or

mental impairment that can be expected to result in death or that has lasted or can be expected to

last for a continuous period of not less than twelve months."[26] Plaintiff's impairment must

prevent her from doing her previous work or any other work existing in significant numbers in

the national economy.[27]

---

[21] 28 U.S.C. § 636(b)(1) (requiring *de novo* review of the claimant's objections to a report and recommendation).
[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g).
[23] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).
[24] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[25] *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (holding that the ALJ's decision cannot be overturned so long as it is supported by substantial evidence).
[26] *See* 42 U.S.C. § 423(d).
[27] *Id.*

-4-

Case No. 15-cv-1034
Gwin, J.

### III. Discussion

A. *The ALJ properly weighed the medical evidence and properly determined Shells' residual functional capacity.*

Plaintiff Shells argues that the ALJ's improperly discounted treating physician Dr. Brar's testimony. Dr. Brar testified that Plaintiff Shells suffers from mental impairments that caused marked limitations in many aspects of Shells' life. The ALJ found that other objective record medical evidence contradicts Dr. Brar's testimony as to the severity of Shells' limitations. The ALJ therefore did not give controlling weight to Dr. Brar's testimony.

Under the treating physician rule, "treating source opinions must be given 'controlling weight' if two conditions are satisfied:  (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"[28]

If both conditions are not met, an ALJ may give a treating source's opinion less controlling weight so long as the ALJ gives "good reasons" for doing so. "Good reasons" are reasons that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.[29] This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [she] is not, unless some reason for the agency's decision is supplied."[30]

In deciding the weight to be given to the treating physician's opinion, the ALJ must consider factors such as (1) the length of the treatment relationship and the frequency of the

---

[28] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)).
[29] *Id*. at 376.
[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Case No. 15-cv-1034
Gwin, J.

examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the

opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of

the source, and (6) any other factors that tend to support or contradict the opinion.[31] The ALJ is

not required to provide "an exhaustive factor-by factor analysis." However, "the reasons must be

supported by the evidence in the record and sufficiently specific to make clear the weight given

to the opinion and the reasons for that weight."[32]

> Here, the ALJ wrote the following about Dr. Brar's opinion:

> I afford Dr. Brar's opinions little weight, as they are not consistent with the
> overall record or supported by the weight of the evidence, including [her]
> treatment of the claimant. I discount [her] opinion completely concerning the
> claimant's physical limitations; [s]he has not treated the claimant for her physical
> impairments at all. Moreover, while Dr. Brar apparently believes that the claimant
> is so impaired she would be unable to function mentally/emotionally in almost all
> areas, as indicated by her GAF scores and ongoing symptoms, the objective
> evidence does not support the marked limitations that Dr. Brar notes in [her]
> opinion. Furthermore, although the claimant has alleged debilitating
> psychological symptoms, the objective medical evidence does not support the
> degree of limitation the claimant asserted. The majority of the claimant's mental
> status examinations show few abnormalities, with the claimant frequently noted to
> have a normal mood and affect, appropriate behavior, and normal judgment and
> thought content (Exhibit B2F; B5F; and B11F). The weight of the objective
> psychological evidence suggests that the claimant's mental symptoms are not as
> debilitating as she alleged.[33]

> As noted by Magistrate Judge Burke, the ALJ explained his decision to assign little

weight to Dr. Brar's opinions by citing to inconsistencies in the evidence.

For example, Plaintiff's mental status examinations indicated that she showed few

abnormalities.[34] The ALJ found that Plaintiff's mental status examinations were inconsistent

with Dr. Brar's opinion that she was severely limited in almost all areas of mental functioning.[35]

---

[31] *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).
[32] *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011).
[33] Doc. 6 at 18-19.
[34] *Id.* at 347-62, 505-85, 614-41.
[35] *Id.* at 19, 590-93, 610-11.

Case No. 15-cv-1034
Gwin, J.

Nor did the ALJ ignore Plaintiff's treatment for depression and anxiety; instead, he found persuasive the treatment notes that stated Plaintiff presented with normal or stable mood and affect, appropriate behavior, and normal judgment and thought content.[36] The mental status examinations and treatment notes represent substantial evidence supporting the ALJ's determination that Dr. Brar's opinion of Plaintiff's marked impairments in almost all areas as inconsistent with the overall record.

Next, Plaintiff contends that the Magistrate Judge improperly recommended affirming the ALJ's conclusion that Dr. Brar's opinion could be discounted because it was internally inconsistent.[37] Her argument is unavailing. Dr. Brar gave Plaintiff a 56 GAF score. A 56 GAF score indicates moderate limitation with social, occupational, or school functioning.[38] The ALJ found Shells' score inconsistent with Dr. Brar's opinion that Plaintiff has marked psychological limitations.[39]

Contrary to Plaintiff's argument, the ALJ acknowledged that inconsistency in his finding.[40] Moreover, the ALJ considered the GAF scores in combination with the mental status examinations to determine that Dr. Brar's opinions were insufficiently supported by the weight of the evidence.[41]

Plaintiff also claims that the ALJ erred in relying heavily on Plaintiff's activities of daily living to discredit Dr. Brar's opinions. The ALJ notes Plaintiff's ability to visit her sister, enroll in school, take full-time computer classes, and start an exercise program, as well as drive and read.[42] The ALJ was justified in using the nonmedical evidence to further support his reasoning

---

[36] *Id.* at 19, 526, 529, 550, 554, 558, 568, 614.
[37] *Id.* at 19.
[38] *Id.* at 344.
[39] *Id.* at 19.
[40] *See id.*
[41] *Id.*
[42] *Id.* at 16, 18-19.

Case No. 15-cv-1034
Gwin, J.

that Dr. Brar's opinion of marked limitations should not carry significant weight.[43] Therefore, the ALJ gave good reasons for discounting Dr. Brar's opinion.

Furthermore, the ALJ properly assessed Plaintiff's residual functional capacity. To determine a claimant's residual functional capacity, "[a]lthough an ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding … [and] an ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding."[44]

The ALJ is responsible for determining a claimant's residual functional capacity "based on all of the relevant evidence" of record.[45] Here, the ALJ found that Plaintiff had only mild daily living limitations because Plaintiff could attend school, start an exercise and diet program, join a gym, lose weight, and make plans to garden.[46] Also, the ALJ stated that the residual functional capacity accounted for Plaintiff's severe psychological impairments.[47]

Further, the ALJ did not rely on his own lay interpretation of medical evidence; rather, he considered Dr. Brar's and non-treating source opinions, assigned weight to the opinions, and adequately explained his residual functional capacity assessment based on record evidence.[48]

Accordingly, this Court agrees with Magistrate Judge Burke that the ALJ properly weighed Dr. Brar's opinion and properly determined Plaintiff's residual functional capacity.

B.  *The ALJ's properly assessed Shells' credibility.*

The ALJ also discounted Plaintiff Shells' testimony about the severity of Shells' mental impairments. Plaintiff says that the ALJ improperly assessed her credibility.

---

[43] *See Gayheart*, 710 F.3d at 376.
[44] *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009).
[45] 20 C.F.R. §§ 404.1545(a); 20 C.F.R. § 404.1546(c).
[46] *Id.* at 15, 19.
[47] Doc. 6 at 19.
[48] *Id.*at 19.

Case No. 15-cv-1034
Gwin, J.

A reviewing court may not "try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."[49] In reviewing an ALJ's credibility determination, a court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [the claimant's testimony] are reasonable and supported by substantial evidence in the record."[50] A reviewing court grants great weight and deference to the ALJ's findings, "particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."[51]

This Court finds that the ALJ's explanations for discrediting Plaintiff's testimony are reasonable and supported by substantial evidence. Here, the ALJ considered Shells' allegation that her mental symptoms were debilitating, but found that Shells' impairment descriptions were inconsistent with the medical evidence and Plaintiff's daily activities.[52]

First, the ALJ reasoned that the objective medical evidence undercut Plaintiff's claims of debilitating psychological symptoms.[53] Plaintiff's mental status examinations show few abnormalities and Plaintiff is frequently noted to have a normal mood and affect, appropriate behavior, and normal judgment and thought content.[54] The ALJ also stated that Plaintiff's treatment records indicating that she was alert, oriented, and showed no cognitive impairments contradict her allegations of limited memory and concentration.[55]

Second, the ALJ found Plaintiff's impairment descriptions were inconsistent with Shells' daily activities. Notably, Plaintiff's statement that she likes to read contradicts her allegations of limited memory and concentration.[56] Additionally, the ALJ considered Plaintiff's other daily

---

[49] *Gaffney v. Bowen*, 825 F.2d 98 (6th Cir. 1987).
[50] *Jones*, 336 F.3d at 476.
[51] *Calvin v. Comm'r of Soc. Sec.*, 437 Fed. Appx. 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).
[52] Doc. 6 at 19.
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.*

-9-

Case No. 15-cv-1034
Gwin, J.

activities, such as traveling out of state to visit her sister, starting an exercise and diet program, enrolling in school and taking a full-time computer class, and driving.[57] Because Plaintiff could function in those described activities, the ALJ reasonably found that Plaintiff's psychological impairments were not as debilitating as Shell alleged.[58]

The ALJ's conclusion that the medical and nonmedical evidence both undermined Plaintiff's credibility was reasonable and supported by substantial record evidence.

### IV. Conclusion

For the foregoing reasons, this Court **ADOPTS** the Magistrate Judge's Report and Recommendation, **AFFIRMS** the ALJ's denial of benefits and **DENIES** Plaintiff's motion for summary judgment.

IT IS SO ORDERED.


Dated:  May 27, 2016                                    s/     James S. Gwin
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE

---

[57] *Id.* at 15, 18-19.
[58] *Id.* at 19.